May it please the Court, I am Troy Edlund, along with Jay Lieberman and Mark H. Jaffee. The gentlemen beside me are, quote, by the way, V.L.T. from Allen and Matthew Keys. A central factor in this case that runs through all the issues in this case is the government's confusion of the unauthorized access prohibitions in the Community Fund Abuse Act, excuse me, and the unauthorized or damaged prohibition. In this case, the government essentially did the charge. All the charges are unauthorized damage charges under 18 U.S.C. 2385a. It was a conspiracy to commit unauthorized damage. It was a substantive charge due to actual damage to the content of addresses for the LA Times, resulting in the ad to the LA Times. So essentially, we're talking tax cuts. And then third, it was intent to cause damage to the streaming companies' content management system by putting up a mock-up of the front page on the Chicago Tribune or on the Times magazine completely. So I don't know. It doesn't matter. I'm going to take you off point just a minute because you said something that kind of makes me worry in this case. It seems to me that you attack Mr. Keys' convictions as they relate to count two and three and to the rest of the sentence. That's correct, Your Honor. So you do not attack the sentence for count one. That's correct, Your Honor. So, as I understand it, would the resolution of this appeal affect the period of incarceration at all? No, because the sentence is already concurred, Your Honor. And the incarceration will remain the same. All will change if we were to accept your argument as to count two. Is the restitution amount? It's the restitution amount. He would have two less felony counts on his record. He may have been able to simply say he was doing it in conspiracy rather than passion, so to speak. Well, if we were to say they were two, so that's if he were to win as both count two and three. That's correct, Your Honor. Yes. All right. I just wanted to make sure because that's the way I kind of got through it. And then I started thinking to myself, maybe that's not what he intended. No, Your Honor. So count two and three, but I'm counting count one. All right. So everything would remain the same on his amount of time he's in jail. We would just be determining whether all these felony counts would be on his record. Yes, Your Honor. And the restitution. And the restitution is one of our qualifying numbers, I'm sure. I'm glad to have that now that we're here. I understood, Your Honor. We must clarify our answer briefly. But to return to the issue, so essentially what's happened here is the government charged unauthorized damage. It's indictment, and it's spent most of the time in this case putting on unauthorized access to these felonies. I understand, and maybe you can have me again. We're really talking about count two here. Are you on your count three?  Well, I understand a three is just to damage a loss, right? A three is an attempt to cause damage. And is that where you're arguing? Are you on the first? I'm on both, Your Honor. I'm saying that's what you're spelling. Let me go to count two. Let's go to count two. The original indictment, but the date of, if you will, the conduct at one given time period, and the superseding indictment moved the date back to October the 28th of 2010, right? That's correct, Your Honor. Plus, the superseding indictment added the language, after his employment was terminated, he's kept and used for malicious purposes, logged in credentials to the Tribune's company, CMS. Those are the only changes, right? That's correct, Your Honor. And you're suggesting that your client would not have even known that he would now have, attempting to come in front of the court, actions that occurred from October 28th to the original December date? No, Your Honor, that's not what I'm arguing. That might be a relevant point, but this is a due process. This is what we're arguing. This is the Amendment to the Grand Jury Clause, and it's right to solely stand trial for stuff that a grand jury has passed on. What we're saying here is that the government has effectively amended the indictment by adding an unauthorized access charge. And you're suggesting the grand jury didn't have these pre, if you will, the pre-October to December acts in front of them? Your Honor, there's nothing in the record as to what the grand jury had. All I know is that the government argued an unauthorized access case when it charged an unauthorized attempts case. That is not a due process in the Amendment to the Notice Issue. That is the Fifth Amendment Grand Jury Clause Issue. And no notice will appear. We should notice of these e-mails and all of this from the beginning, but that's not the point with the Grand Jury Clause, Your Honor. The Grand Jury Clause usually states that a defendant has a right, a constitutional right to be solely charged by what the grand jury indicts on, and neither the government nor the court can take that constitutional, that substantial constitutional right away from him. But what happened at this trial, Your Honor, is most of this trial spent talking about the expulsation or covering, if you will, on an e-mail database, and an e-mail campaign that has nothing to do with the 1038-5-H version. They're not causally related, Your Honor, and it must be spent on having to do courts at the trial, arguing that point. And going back to your malicious code, Your Honor, to change the indictment paragraph 1H that you're referring to, you say that Mr. Chisholm kept the logins for malicious purposes. The e-mails that he sent were not logins, right? So even the judge said, even in the excerpt of the background on page 18, the damage in this case is all about the damage to the LA Times website. Okay, the e-mails that Mr. Keith sent are not at all causally related to the damage in that issue. And it suggests that why you can clearly see that, is that if you take out the e-mails that the court will just read, you must remove that content completely, or to keep the rest of the content that's alleged in the indictment. You still have the latimes.com website. But if you remove him allegedly passing, using the password of 91234, I believe the separate dates are left somewhere in there, to sharpie, you no longer have that. And 2385A requires there to be a causal relation, because knowing the transmission of a code, the resulting content of which intentionally causes damage to the LA Times computer, you cannot maintain plausibly under the law that those e-mails that Mr. Keith sent were a transmission of a code. That affects the LA Times website. If they were a result of a deep denunciation of the e-mail, even editing this website didn't occur to him until he gets his internet status, which I believe is around September, early December, Your Honor. So the government, would you read the indictment? You could plausibly read it. Oh, yes, you kept his log-ins to the CMS, the subscription company, from October 28th. But you can't read it as an indictment that charges one of my facts and these things. There's nothing in the indictment. He's got a constitutional right to be solely charged by a grand jury and not by the government and not by the court. I understand that. But my worry, I guess, is this. You admit to me that you don't know what the grand jury found or didn't find, and on what facts it found or did not find. You admit to me, then, that you don't know exactly what the grand jury did, and yet the only thing I've got are the two things that I related to you that change the original indictment to the superseding indictment. And therefore, it seems to me that what we're really looking at is, can I say in this date range change and this language, is there enough there to suggest that the superseding indictment was changed, that somehow it was amended constructively? Your Honor, it's not the language in the indictment. It's the complex set of facts that are presented at trial, and that either happens under this circuit's precedent. The circuit has two standards. It's either a complex set of facts that are presented at trial, and the fact that we admit the indictment, which happened here, you've got a complex set of facts related to unauthorized actions, not unauthorized damage that can be constructedly amended in the indictment, or it can be constructively amended through the jury charge. The jury charge is one of those from U.S. v. Simpson's. And that's precisely what happened here. This is Cairo, the United States, the United States v. Simpson's. It doesn't matter. What the grand jury knew is resolved not in the records. It's not relevant to this appeal. And you don't know. It's a mystery. It's black box and secret proceedings. Yeah, I understand all of that. So I'm just trying to figure out how I can effectively understand your arguments, which is that somehow evidence was presented at trial, and the jury was allowed to consider that as amending the, if you will, the indictment. I can't help putting it in perspective as to what the changes were in the indictment. That's an easy answer, Your Honor. The girl who had a flat with Brenda DeRosa, who was Mr. Keith's boss at Fox 40, they then proceeded to talk about how he actually copied a e-mail address listed from the Greenwich database, Your Honor. Now, that is not unauthorized damage to the computer copy, despite some of the cases in the other districts that say copying a e-mail address that's a copy, that is damage to the CFAA. That can't be the law because they can eliminate it. As we argue in our papers, material in our reply was to eliminate a copy of the CFAA because almost every unauthorized access case involves copying. Yet that's what they spent a lot of time on, on the copying, and then the e-mail address, the e-mail sent by Mr. Keith to the Fox 40 groups. Now, that may be cyberstalking under 18 U.S.C. 2261-A. That may be unauthorized access. That, although I think it's a little cryptic, it is not, Your Honor. It's damage to a computer. I would submit to this court that Brenda can have three-quarters of the trial. This is a testimony of that. That is the constructive amendment. That is where the government is coming in and effectively trying my client for a client that he's not been charged with. I think that's pretty straight up from the record. I think the only way you have to get court inspection to somehow come to the point that the exfiltration of the list of the really brilliant database is somehow deterring it by the e-damage, you are not stretching the boundaries of the CFAA so far. You're going to eliminate half of it. You're going to clog these courts here with civil litigation, even civil county. It's so untethered to actual congressional intent that I don't think this court should permit it. And if you have a further question, I'd like to resume the rest of my time. Well, one is damage in your view. I'm sorry, Your Honor. I'm not quite understanding what you view the difference to be between the access and damage. The access, well, I don't know. I mean, it's technically needs to, and damage is defined as any impairment to the integrity or ability of the damage. If you assume it's construed as, say, a backup score or a DDoS attack, just a new trial starts attacking our website so you can't get into the data. None of that happened. When you come in, the email address says, it's still hidden. It's still hidden, so there's no damage. There's, what I'm saying, there's no damage in all of the Fox 40 allegations. Yet, you have it with high-tiers that are complaining, but they became so confused that the court needs to reverse all these accounts, and I'd like to reserve the rest of my time. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Matthew Siegel, one of the AUSA's who drew up the case. Your Honor, if this is helpful to the Court, what I'd like to do first is explain how the email campaign was cleared, the con law custody, et cetera, were in the misfold, even if the cops who were not in the indictment. So we're not here talking about whether the jury should have heard those things. And then I'll proceed to explain why it was intended for the effective constructive amendment to have a trial where the evidence was presented and the jury was asserted in the fashion that it was. And that construct was also in touch with the pioneers. Mr. Keyes was appropriately charged in the first place because I think the defense is sort of begging the question of the account that the charges were insufficient from the get-go. I'll get right there in a minute. So in the court's panel opinion, this Court had no problem saying that it is unauthorized in this instance to circumvent technological access barriers. That is what unauthorized in this instance was, and there's no controversy to it. What Keyes did in this case was to circumvent access barriers in the way that Nelson calls it. That is to say, you have a ProCoin password, you get it from a former employee, whatever. What Keyes did in this case was he broke the technological access barriers he had. But what the witnesses in this case testified who were responsible for the administration of the CMS system said was that he actually made changes to the authentication system of the CMS that would allow total strangers to get in with a new set of credentials. And what John Coffin, Specialist John Coffin did, what John Clason did was actually identify the command lines and the backdoor access by username. Now, a lot of that was a non-1234. That's the one that was first passed around with Keyes in a colorful characterization of the objects we received. And another one was DS1234. DS1234 was a set of backdoor access credentials that was used to download the email list on November 3rd and then November 22nd. Now, the government did not argue that that download was itself damaged. The defendant cited an excerpt of record, let's see, 153 or 156, to make an argument, where they say that they made an argument. But what the government's point was there, if you look at it, is that he carved all these backdoors, and with them he was doing these malicious things such as altering people's credentials, downloading the email list, making alterations to the front page of websites. So that's a distinction between unauthorized access, which anybody can do with a set of passwords, and damn it, which is creating whole new credentials on the FM server. And that is what this court already considered in an unauthorized damage case, which is Middleton. And in Middleton, you need to understand Middleton in the context of creative computing, which says that it's also to prevent damage, and it hasn't changed under this measure. So a system, with utility in this case, where so many people who were editors of these newspapers, who were IT managers, responsible for the management of the system, said that a central feature of our system is the exclusion of outsiders. And that's what he broke. That's damage. Well, there goes your damage argument. But now let's turn to how come that evidence would have come in even if it hadn't been in the account, too. Okay. Because to me, that's the big issue here. I looked at count two. I looked at what you alleged in the indictment. Then I looked at the Super C indictment, and I saw what the changes were. And I said to myself, how would the defendant have known what was coming? And then I look at the jury instructions, and I say, how do I know what the jury convicted Keith of in count two? It seems to me there's conduct there, which was never alleged in count two, but the jury very easily could have convicted him of without the allegations that are in count two, which I think is their argument for it. So the defendant wants to frame count two as that count two, paragraph two of count two, is just the new synergy, the new language of the doubt and synergy, right? And what the defendant is trying to say is that, because the first paragraph of count two incorporates all of the introductory and mattering means and over-enacted language of the conspiracy, then count two should be convenient to the allegations in count one. I think so, too. It gives an overly narrow reading to what these allegations actually are. Well, but I didn't see anything in count two that related to anything except the L.A. Times. Well, Your Honor, the question... The original indictment seems to concern only the alteration of the L.A. Times website. Your Honor, I'm glad you asked that. It's more clear than I thought. That inserts the record 237... All right. ...which is the disease, so there's an addition to the indictment, and for the defendant in its implied race, he's calling all this conduct Fox 40 conduct, so Fox 40's got nothing to do with the indictment. But the object of the conspiracy, charged in paragraph three, says that of the following objects, among others, to make unauthorized changes to websites that your new company used to communicate news features to the public... Which is the L.A. Times. ...and to damage computer systems used by the Tribune Company. Yeah, the L.A. Times. I don't think so, Your Honor. I mean, it carries a key word that connects those two phrases, and moreover, in the next paragraph, what it says there, it means, since the participants identified Tribune Company, Fox 40, and the Los Angeles Times as targets for online intrusion and web vandalism. So through the backdoor on the creation of new administrator status, it's not as clear as it is. And so the defendant can say, this is only about the L.A. Times, but that is not consistent with the indictment. And as you go down the matter, it means, and even the overheads, the Los Angeles Times conduct is what's charged most specifically, but the question, if you're deciding a constructive amendment claim, is whether there was evidence that presented that was outside the allocations. I mean, in, for example, this court in Goss, in setting up a variance claim, says, the indictment said, among others, the defendant was on notice in Goss that when he was obstructing justice, the indictment alleged that he was telling his witness that he had a few to justify, but he was convicted on persecution to a different story. And the question about notice, the charge is about, does the indictment give notice that there's more coming? And unquestionably, this indictment says, among other things, but it also specifically identifies funds 40 as a target for online intrusion and web payments. Now, they can say what they want about how this should have been charged as unauthorized access, but, you know, query whether we could have made up the other elements of that felony. But for a constructive amendment claim, the real question is, are the allocations encompassed in the indictment? And in the reply brief, they essentially concede that. What they say, what they've moved to in the reply brief, rather, is that these facts were not specifically alleged. That would be a new development in the law of conservative amendment. It was a civil case where there's a requirement that fraud be put with specificity, for example. And that this is notice-feeding. And what this indictment told the defendant is, you either got fired or you quit, who knows, whoever dropped the hand on October 28th became this stable of unauthorized password using the incriminations used for most purposes. You targeted a chicken company, Fox 40, Los Angeles Times, for things that can't really be described only as the Los Angeles Times did. And then you hooked up with anonymous and had this conspiracy. And you're out of the conspiracies formed, not with, because this is not a conspiracy tied to the Los Angeles Times. The words conspiracy are diseases. You don't color the words that are quoted in the indictment. It's much broader. It's going as far as I'm concerned. And that's what they were doing. I mean, I read the United States v. Cecil. Are you familiar with that case? Cecil? Cecil? It's a 1979 case. I have to have a copy of that. All right. Then I'll ask you about that. What I would like to talk about is... I think my worry about this is, and I'll look back at it again, but it seemed to me that the original indictment seemed to concern only the alteration of the L.A. Times website. It seemed to me that when we went to the superseding indictment, all we did is change the date for the range and then add some language. And I guess... there's nothing which talks about cancer emails, downloading of Fox Reports members' subscriber lists, emails to the Fox Reports members, the Cohen CMS access problems, which is the evidence presented. And then I look at the jury verdict, and I'm not sure whether we're talking about the L.A. Times website problem or these first problems, which were never described. It's all of it, and all of it is sufficient to connect to, because this indictment doesn't infuse me in what is necessary for a substantive count to what's alleged to have actually been a conspiracy. It was known a million times that the defendant said this over and over, but it's not. While Fox 40 is identified as the target, the alteration of network credentials is identified as the target. The defendant... looking at the emails, your Honor, this seems lost, right? When they get these emails, they have to read them. And this was in the testimony of Brandon Mercer. He sent these nine emails, emails from the defendant to Brandon Mercer, talking about how he penetrated their CMS, what information he had, talking about his understanding of the concepts of damage and loss. There is just no way that it could have been an abuse of possession that is hard to exclude. And I don't know if I'm starting from that, but it should have come in. Well, I'm not buying it yet, but I'm listening very carefully, because I've tried to put all this stuff in my computer, which I, to some extent, suggest that you have a first indictment, and now you have a superseding indictment. And I guess I'm trying to figure out... And then I have the jury's verdict as to the jury instructions, and that's why I asked you the questions. The jury was instructed in the language of the statute. They're presumed to have followed it. Now, it's the same language of the statute, that's why they changed it up, too. So this is not the first act of the Constructive Amendment. We're a two-statute jury. All of the theories are presented to the jury. Only one was in the indictment. All of the words in the jury instruction, or in the charging paragraph, if you have to, was really alleged here. It's sort of a conference of facts kind of Constructive Amendment. And I think that is defeated by this Court's teaching in Doss, where this Court says, when the indictment says, among others, that if entities are noticed, that there could be more coming. And it's even more specific here, because the indictment specifically says, Fox 40, never mind what Your Honor has been told. The first indictment concerned only the Los Angeles Times. Well, if you're told, I'm looking at it, reading it. Well, what's important is what the superseder says, and the superseder also says something else. Yes, there's only two changes in the superseder, and I've given them to you. And I still have a tough time understanding how those two changes would make a difference in what we've got to deal with. If this isn't sufficiently in the first, you're not going to convince me those two changes are going to do it. Well, the only thing is, what I would offer Your Honor, is that there is nothing that happened between October 28th and December 8th, except for a switching of objects. Right? There's nothing in the record at all, any transitions of codes, anything, except for the e-mails in the very beginning of the sentence called conduct, which overlaps with the beginning of the conspiracy. There is no other evidence that you could have been, especially last year as well, such as your court, that's given by the defendant, language in the words of the statute, in a indictment that talks about FOX 40, where the defendant complains they charged this in order to expand it and include FOX 40 conduct, and that indicates a jury instruction that they were handed, and the jury convinced and properly have a language of the statute. Your Honor, I just have one more further question. If we were to disagree with you, what does that put at hand on the judgment? Do you agree with your adversary? $100. Do you have any observations to the fact that I agree that the jury conclusion does change and talk about the restitution amount, but the restitution would come down if I could help to know further that those returns of it, if you ask me that, I'll answer it. You better ask me, because I'm of the understanding if I reverse used Cal 2, the restitution would come down by that amount. So, the problem that the defendant has is that the restitution is calculated in a conspiracy crime, a stroke of conspiracy, and again, maybe we disagree, but we'll see. But you're going to have to evaluate that, and I urge you to focus on this matter and meet with your counsel and talk to them and find supporting answers  Thank you, Your Honor. Thank you, Your Honor. Thank you, Your Honor. Just real briefly, the government kept the fact that it charged an unauthorized damage case and they basically go on to an unauthorized access case. I'd like to touch just very quickly on the one case that the United States decided for the notion that damage within the CFAA can be merely a possession and you should use the passwords to assist with that. So that seems to be Milton, which is a decision by this court  The problem with Milton is that it's now banned in the law. And the reason for that is that the CFAA's definition of damage and loss were amended on August 26, 2001. Previously, the damage and the loss definitions were one together in one section. After Milton was decided, they were split apart and I think part of the reason that happened is because the confusion between damage and loss because the damage in the CFAA is just related to the data. Moreover, in Milton, you actually had damage to the system because he decided in Milton, it actually was related to the data and the damage issue was not the central issue in Milton. The issue in Milton, strangely enough, is that he argued that the CFAA did not apply to corporations. So to the extent that anything the government believes or argues relies on Milton, in respect to this court, that Milton is bad in law. And I'm cautious about anything that you're looking at in cases regarding the CFAA. It has been amended numerous times, but I would also argue that the United States can nozzle this court's decision in its first incarnation in 2012 the decision known as Nozzle 1 makes a bunch of cases saying that copying information is damaging to the CFAA bad law, because as this court clearly stated in Nozzle, the CFAA is an anti-hacking statute it's not a misuse of information statute. Are you saying that damage and loss... Go ahead. You ask the question. Are you saying that deletion is the only way in or there could be damage in the summary of the statute? No, your honor, there could be impairment to the integrity or the availability of the data, but what impairment means and what integrity means are nowhere defined. Those are difficult questions to answer because, for instance, we argue that if there is a readily available backup of the data, there is no damage. For instance, if you've got five perfectly identical files, and you submit to the court, I've got four copies left is that about damage to the CFAA? Is there impairment to the integrity of the data when I've got four exact copies of it? Because you're going to issue certain sort of, one of the interesting things to me about this case in the damage context, and why I think this is actually an important case in terms of the definition of damage because our position is that the government is taking such a broad view of damage, like I've said before, that they're writing out half the statute, and this is also a civil statute. So you're writing all sorts of civil litigation based on these broad-based definitions of damage and you're also turning a lot of potentially innocuous conduct into a felony for, for instance, like passbook sharing. You know, this court just held that it was infallible to be powers and no's will do that if an employer can affirmatively revoke your authorization to do something, so now I've shared a passbook with somebody, and the CFAA damaged me. The difference between sentence, between 238-C unauthorized access charge, and 1030-85-A unauthorized damage charges, one is 5 years, the other one's 10, and it's very easy to argue that the value of the damage obtained is over $5,000 which is the felony threshold, which is quite rare, you rarely ever see, you see in your CFAA prosecution. Thank you for your argument. Thank you very much, Your Honor. Thank you very much for your argument in this very interesting case, 1610197 USA v. Keys We'll now turn to our last case on the calendar which is 1715993 Henry v. Central Freight Lines
judges: Schroeder, N.R. Smith, Battaglia